IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL SHEFFY, individually, and CAROL SHEFFY, h/w** <br><br>　　　　　**Plaintiffs,** <br><br>　　　v. <br><br> **ARAMARK UNIFORM & CAREER APPAREL, LLC and EG RETAIL (AMERICA), LLC** <br><br>　　　　　**Defendants.** | **CIVIL ACTION NO. 20-5973** |

## MEMORANDUM OPINION

Rufe, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　November 16, 2023

　　　This case arises out of a slip and fall incident that occurred in a Turkey Hill Convenience Store in Lebanon, Pennsylvania. Plaintiffs Daniel Sheffy and his wife, Carol Sheffy, sued Aramark Corporation and EG Retail (America), LLC for the injuries Daniel Sheffy suffered and for Carol Sheffy's loss of consortium. EG Retail owns and operates the Turkey Hill Convenience Store, while Aramark supplied the floor mat that Daniel Sheffy alleges caused his fall.[1]

　　　EG Retail has moved for summary judgment.[2] Aramark has moved for leave to join EG Retail's Motion.[3] Aramark's Motion for Leave to Join will be granted, and summary judgment will be denied as to EG Retail and Aramark.

---

[1] Plaintiffs initially filed suit against Defendant Aramark in the Philadelphia Court of Common Pleas, seeking damages for injuries Mr. Sheffy sustained in the fall and for Ms. Sheffy's loss of consortium. Aramark removed the case to this Court based on diversity of citizenship. Aramark named EG Retail as a third-party defendant, after which Plaintiffs filed an amended complaint against both Defendants.

[2] Doc. No. 57.

[3] Doc. No. 58.

I.  **BACKGROUND**[4]

Every morning, Monday through Friday, Daniel Sheffy visited the Turkey Hill store to pick up newspapers on his way to work without incident. However, on April 22, 2020, at approximately 6:20 A.M., he testified that upon entering the door, "it felt like [his left foot] went under something," and he fell.[5] Mr. Sheffy was loaded onto a stretcher and transported to the hospital. He sustained serious injuries as a result of the fall, including a back fracture, bilateral knee injuries, right-hand wound, and concussion with loss of consciousness.[6]

Mr. Sheffy alleges one count of negligence against EG Retail for: (1) failing to follow applicable industry standards for the selection, installation, inspection, care, and maintenance of entrance mats to a commercial, retail facility; (2) permitting the entrance mat to deteriorate to the point of becoming uneven and buckled; (3) failing to utilize safe, slip-protected floor mats on the premises; (4) allowing dangerous conditions to exist on the mat it knew was placed near an entrance area of the premises; (5) failing to warn Mr. Sheffy of the dangerous condition of the mat; and (6) failing to otherwise provide and maintain a mat that would ensure a safe walking surface on the retail premises.

Mr. Sheffy also alleges one count of negligence against Aramark based on the same underlying incident for (1) failing to provide the retail store with safe, slip-protected floor mats; (2) failing to exercise due care by properly designing, constructing and/or maintaining the mat; (3) failing to ensure it utilized materials in the mat that were conducive to providing a smoothly

---

[4] The background facts are based on the Stipulated Facts provided by the parties unless an additional citation states otherwise. *See* Statement of Stipulated Material Facts [Doc. No. 57-1].

[5] Def. Mot. for Summ. J. [Doc. No. 57] at 4.

[6] Am. Compl. [Doc. No. 20] ¶ 16.

transitioned walking surface; and (4) failing to warn the management of the retail facility of the aforementioned hazards posed by the mat.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[8] A "genuine" dispute over material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9] To evaluate a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[10] Nonetheless, the non-moving party must support its opposition to the motion by pointing to evidence in the record.[11] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[12]

## III. DISCUSSION

A federal court sitting in diversity must apply state substantive law and federal procedural law.[13] Under Pennsylvania law, a plaintiff must establish four elements on a negligence claim: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a

---

[7] FED. R. CIV. P. 56(a).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[9] *Id.*

[10] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[11] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

[12] *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (citations omitted).

[13] *Chamberlain v. Giampapa,* 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938)).

causal connection between the conduct and the resulting injury; and (4) actual damages.[14] Defendants mainly argue that Plaintiffs have failed to establish a causal connection between Defendants' conduct and the fall and that they did not breach any duty to Mr. Sheffy.[15]

### A. Negligence Claim Against EG Retail

There is no dispute that Mr. Sheffy was a business invitee of EG Retail at the time of the accident. "The duty owed to a business invitee is the highest duty owed to any entrant upon land."[16] Pennsylvania has adopted § 343 of the Restatement (Second) of Torts, which states:

> A possessor of land is subject to liability for physical harm caused to invitees by a condition on the land if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.[17]

"To establish a breach of duty, the first prong of that test requires an invitee to 'prove either that the proprietor had a hand in creating the harmful condition, or that he had actual or constructive notice of such condition.'"[18] The parties have submitted expert reports with contrasting conclusions as to what caused the fall. Plaintiffs submitted an expert report from Daniel E. Fleisher, P.E. and Jared E. Barket, P.E. ("Fleisher Report").[19] EG Retail submitted a

---

[14] *Tameru v. W-Franklin, L.P.*, 350 F. App'x 737, 739 (3d Cir. 2009).

[15] Def. Mot. for Summ. J. [Doc. No. 57] at 3.

[16] *Taylor v. Wal-Mart Stores East, L.P.*, 2023 WL 2330737, at *2 (W.D. Pa. Mar. 2, 2023) (quoting *Dahl v. Sam's E., Inc.*, 2021 WL 2287438, at *3 (Pa. Super. June 1, 2021)).

[17] Restatement (Second) of Torts § 343; *see also Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983) (adopting Section 343).

[18] *Larkin v. Super Fresh Food Markets, Inc.*, 291 F. App'x 483, 484–85 (3d Cir. 2008) (citation omitted).

[19] Pl.'s Expert Report ("Fleisher Report"), Ex. D [Doc. No. 57-3].

responsive report authored by John C. Suter ("Suter Report").[20] EG Retail also submitted Arthur H. Borcher's forensic examination of the store security footage[21] and a report by Stuart Drobny of STUMAR Investigations, which documented, through photographs, the entryway of the store.[22] Defendant Aramark provided a "Report of Examination" by Robert J. Nobilini ("Nobilini Report").[23] For purposes of summary judgment, the parties rely mainly on the Fleisher and Suter Reports, although the Court takes each submitted Report under consideration.

1. *Plaintiff's Fleisher Report and Defendants' Rebuttal Suter Report*

The Fleisher Report opines that the fall was caused by Mr. Sheffy's left foot going underneath a raised edge of the unsecured floor mat, and that the "mat created a foreseeable, recognizable pedestrian hazard"[24] because it was "unsecured to the floor, susceptible to movement and susceptible to being rippled, buckled, and/or raised off the floor," which was in violation of accepted practices, codes and standards.[25] The Fleisher Report also states that EG Retail failed to employ proper inspection and housekeeping of the mat and its surrounding area.[26]

In contrast, the Suter Report states that EG Retail followed all code and industry standards and that "there is no evidence that anything except Mr. Sheffy's own actions contributed to his fall."[27] The Suter Report opines that the most likely explanation for the

---

[20] Def. Expert Report ("Suter Report"), Ex. E [Doc. No. 57-3].

[21] Def. Expert Report ("Borcher Report"), Ex. I [Doc. No. 57-3].

[22] Def. Report ("Drobny Report"), Ex. J [Doc. No. 57-4].

[23] Def. Expert Report ("Nobilini Report"), Ex. G [Doc. No. 57-3].

[24] Pl.'s Expert Report ("Fleisher Report"), Ex. D [Doc. No. 57-3] at 12.

[25] *Id.* at 23.

[26] *Id.* at 15.

[27] Def. Expert Report ("Suter Report"), Ex. E [Doc. No. 57-3] at 27–28.

5

flipping up of the corner of the mat was that Mr. Sheffy dragged his left foot on top of it and that mats are "not intended or expected to resist this type of force."[28] In coming to these conclusions, the Fleisher Report and the Suter Report contain conflicting opinions regarding the adequacy of: (1) the type of mat; (2) the placement of the mat; and (3) the inspections conducted by EG Retail employees. The Court summarizes these main issues below.

      *a.*    *Type of Mat*

Both reports address the adequacy of the type of mat used in Turkey Hill's entranceway. The Fleisher report agrees that the mat in the entranceway was Aramark's "Standard Mat," which—according to Aramark's website (as cited by the Fleisher Report)—is a "durable slip-resistant style[]" and ADA compliant. However, the Report shows that the mat was not listed as National Floor Safety Institute ("NFSI") Certified.[29] The Fleisher Report further explains that the Standard Floor Mat has a pattern of shallow dimples, which, in theory, are used to secure a mat in place, but the Report posits that the "laminate flooring present within the Turkey Hill at the time of the incident did not provide an interlocking surface for the mats' bottom dimples and, therefore, did not provide mechanical resistance to sliding."[30] The Fleisher Report concedes that the Standard Floor Mat was technically "an acceptable mat to be used at an entranceway," although it argues that the NFSI-certified "Steady Step™ Mat" would have been more appropriate because it was a heavy-duty mat with suction backing that worked better on smooth floors, like those of Turkey Hill.[31]

---

[28] *Id.* at 13.

[29] Fleisher Report, Ex. D [Doc. No. 57-3] at 14.

[30] *Id.*

[31] *Id.*

The Fleisher Report concludes that the Standard Mat is more susceptible to rippling, buckling, and/or raising off the floor and that, "had reasonable and suitable floor mats been properly and reasonably maintained at this location, with reinforced edges, or a mat system recessed into the floor, or mat tiles adhered to the floor, to prevent mat edges from buckling, rippling, and/or raising off the floor," the probability of the incident occurring would have been reduced or eliminated.[32] The Suter Report counters that there was sufficient mechanical resistance to sliding by the contact between the two surfaces (the Standard Mat and the Turkey Hill floor)[33] and the fact that the mat initially did not move out of position, except for the flipped corner, is further evidence that there was mechanical resistance.[34]

However, a reasonable factfinder could conclude that the mat *did* move out of position after the initial corner of the mat flipped up. The submitted surveillance footage, on Camera 2 at 6:21 A.M, appears to show the mat slip under Mr. Sheffy as he tries to stand up after the fall.[35] This is generally in line with the Fleisher Report's recitation of events. The Fleisher Report states that the security footage shows that: (1) Mr. Sheffy fell after he stepped with his left foot; (2) the left corner of the floor mat closest to the entryway flipped off the floor onto itself; (3) Mr. Sheffy tried to stand up on his left leg, at which time the mat "was seen sliding buckling, and rippling into itself"; and (4) Mr. Sheffy collapsed into the check-out counter and then remained lying on the floor until the paramedics loaded him on a stretcher.[36]

      b.    *Placement of the Mat*

---

[32] *Id.*

[33] Suter Report, Ex. E [Doc. No. 57-3] at 16.

[34] *Id*.

[35] [Doc. No. 50].

[36] Fleisher Report, Ex. D [Doc. No. 57-3] at 4–5.

Next, the Fleisher Report points to the EG Retail Safety Manual, which provides that employees must "[k]eep all rugs and mats straight and flat on the floor" and "[c]lean dirt from under mats periodically to prevent them from sliding."[37] The Fleisher Report further points to the surveillance footage and the testimony of Mary Gettle, the Turkey Hill Assistant Manager who was working during the incident, to demonstrate that the positioning of the mat violated EG Retail's protocols. Ms. Gettle testified that she believed the mat needed to be "positioned right at the front door near the silver plate that's on the door frame" because, otherwise, "someone could trip on it."[38] Images in the Fleisher Report, which were taken from the security footage, show that the mat was not entirely straight or "flush" against the silver plate of the door frame.[39]

In response, the Suter Report articulates that the Safety Manual submitted in the Fleisher Report was dated May 27 and May 28, 2020, more than a month after the fall.[40] The Suter Report does not, however, point to any evidence that the manual had changed since the time of the incident, nor does EG Retail argue as such. The Suter Report also claims that the manual's language that "all rugs and mats" must be kept "*straight* and flat on the floor" is unclear in its definition of "straight," *i.e.*, that it raises questions as to the mat being "straight in relation to what landmark."[41] The Suter Report takes issue with the fact that Ms. Gettle could not recall if placing the mat straight *against the threshold* was written protocol. The Suter Report further

---

[37] Fleisher Report, Ex. D [Doc. No. 57-3] at 11.

[38] Statement of Stipulated Material Facts, at 11–13 [Doc. No. 57-1].

[39] Fleisher Report, Ex. D [Doc. No. 57-3] at 12.

[40] Suter Report, Ex. E [Doc. No. 57-3] at 14.

[41] *Id.* (emphasis added).

states that there is no evidence that positioning the mat against the threshold has any safety or trip-prevention benefits, except for Ms. Gettle's unsupported opinions.[42]

        *c.*        *Standards, Codes, and Practices*

Both the Fleisher and Suter Reports reference various standards, codes, and practices, including the International Standards from the American Society for Testing and Materials ("ASTM"), standards from the National Safety Council ("NSC"), slip, trip, and fall prevention standards from the American National Standards Institute ("ANSI") and National Floor Safety Institute ("NFSI"), and two Codes adopted by the City of Lebanon (the "International Property Maintenance Code" and the "International Fire Code").[43] It is not necessary to review each standard in depth for purposes of summary judgment.

The Fleisher Report determines that the maintenance of the subject floor was not compliant with ASTM Designation F1637-19, *Standard Practice for Safe Walking Surface*, which states that "mats should be fixed in place *or* provided with slip resistant backing."[44] It appears that the Fleisher Report is arguing that the mat should have been secured in place because the slip resistant backing was inadequate due to the Turkey Hill floors.[45] The Suter Report asserts that the mat did not need to be secured to the floor, as the mat *was* slip resistant.[46] The Suter Report correctly states that the Standard Mat was listed as a "durable slip-resistant[]" style on Aramark's website, which was cited in the Fleisher Report.

---

[42] *Id.* at 15.

[43] *See* Fleisher Report, Ex. D [Doc. No. 57-3] at 14–22; Suter Report, Ex. E [Doc. No. 57-3] at 20–27.

[44] *See* Fleisher Report, Ex. D [Doc. No. 57-3] at 15 (quoting ASTM Designation F1637-19, *Standard Practice for Safe Walking Surface* 5.4.5) (emphasis added).

[45] *Id*.

[46] Suter Report, Ex. E [Doc. No. 57-3] at 20.

The Fleisher Report also cites the ANSI standard for the Provision of Slip Resistance on Walking/Working Surfaces, ANSI A1264.2-2012, which provides that "[m]ats and runners shall be routinely inspected and adequately maintained."[47] The Fleisher Report discusses the deposition of Mary Gettle, who testified that there is no record that she inspected the mat that morning and that she does not remember if she inspected the mat on the day of the fall after entering the store at 5:00 AM.[48] She also testified that she does not know if the mat had been cleaned during her shift prior to Plaintiff's fall.[49] The Suter Report notes that the fact that the floor manager could not recall when the inspection occurred does not mean that it was not inspected, and the fact that the mat was in good condition and flat at the time of the incident demonstrates that it was inspected.[50]

2. *Defendants' Additional Expert Reports*

Defendants produce two additional expert reports, although these reports are not discussed in extensive detail by any of the parties. The Nobilini Report states, based on a review of Mr. Sheffy's medical records by Dr. Thomas Graham, that "Mr. Sheffy suffered from bilateral knee arthritis which caused gait instabilities."[51] The Nobilini Report therefore concludes that Mr. Sheffy likely fell because he failed to properly lift his left foot as he entered the store, which is "consistent with the gait instabilities described by Dr. Graham in his report."[52] The Borchers Report concluded that there is no evidence of a material defect or misplacement of the floor mat

---

[47] Fleisher Report, Ex. D [Doc. No. 57-3] at 19.

[48] Statement of Stipulated Facts [Doc. No. 57-1] at 10, ¶ 30.

[49] *Id*. at 14, ¶ 35.

[50] Suter Report, Ex. E [Doc. No. 57-3] at 25.

[51] Def. Expert Report ("Nobilini Report"), Ex. G [Doc. No. 57-3] at 2.

[52] *Id.* at 5.

10

based on Mr. Borcher's forensic examination of the surveillance footage.[53] Lastly, EG Retail's investigator, Stuart Drobny, issued a report documenting the entryway of the store through photographs and measurements.[54]

### 3. Genuine Disputes of Material Fact

A plaintiff's "ability to produce evidence of a dangerous or hazardous condition is the crux of a premises liability action involving a slip-and-fall."[55] Here, based on the expert reports, depositions of Mary Gettle and Daniel Sheffy, and the surveillance video, reasonable minds could differ as to whether the mat constituted a dangerous or hazardous condition and whether this condition was caused by EG Retail. There are genuine disputes of material fact as to whether the mat was adequately secured to Turkey Hill's floor, whether the mat was positioned correctly, and whether applicable standards and practices were followed. These issues go to the heart of whether EG Retail's conduct caused the fall and, therefore, whether EG Retail was negligent. Taking the facts in the light most favorable to Plaintiffs and with the understanding that "questions of causation should not be lightly taken from a jury,"[56] Mr. Sheffy has produced sufficient evidence from which a reasonable factfinder could hold EG Retail liable. This precludes the Court from granting summary judgment in favor of EG Retail.

### B. Negligence Claim Against Aramark

As noted above, Aramark did not file a separate motion for summary judgment, instead joining EG Retail's motion. In its reply brief, Aramark offers the additional argument that it

---

[53] Def. Expert Report ("Borcher Report"), Ex. I [Doc. No. 57-3].

[54] Def. Report ("Drobny Report"), Ex. J [Doc. No. 57-4].

[55] *Carter-Butler v. Target Store #2596*, 2016 WL 8716338, at *3 (E.D. Pa. Feb. 19, 2016) (quoting *Daniels v. Sears & Sears Roebucks & Co.*, 2016 WL 521205, at *3 (E.D. Pa. Feb. 10, 2016)).

[56] *Stamper-Murray v. U.D.H. Management Corp.*, 2015 WL 3840937, at *5 (E.D. Pa. June 22, 2015).

could not have breached a duty to Mr. Sheffy because the company delivered the mat nearly two weeks before the incident. According to Aramark, "[t]he idea that Aramark would have any responsibility for the placement of a floor mat inside a customer's business 13 days after the mat was delivered and in the sole possession of the customer is ludicrous."[57]

In *Hlywiak v. National Railroad Passenger Corporation*, an analogous case involving a slip and fall on a mat at an Amtrak train station, the district court denied the defendants' motions for summary judgment.[58] The court rejected the mat supplier's argument that it could not be liable because it only delivered the mats once a week, holding that "[l]ike any actor engaged in the performance of an act, [the supplier] had a duty to exercise reasonable care in placing its mats in 30th Street Station" and to "prevent unreasonable risk to others."[59]

The Court is persuaded by the Court's reasoning in *Hlywiak*. Here, Plaintiffs assert that Aramark failed to provide the retail store with safe, slip-protected floor mats and failed to warn management of the alleged hazards posed by the mat. As in *Hlywiak*, Aramark had a duty to exercise reasonable care in distributing and placing the mats at Turkey Hill. "[T]he actor, if he acts at all, must exercise reasonable care to make his acts safe for others."[60] Reasonable care is "that which a reasonable man in his position, with his information and competence, would recognize as necessary to prevent the act from creating an unreasonable risk of harm to another."[61] As a supplier to EG Retail, Aramark had a duty to ensure that the mat being used did not cause unreasonable risk to others. Just as Health Mat was found to have a duty in *Hlywiak* to

---

[57] Def. Aramark's Reply [Doc. No. 60] at 4–5.

[58] 223 F. Supp. 3d 395 (E.D. Pa. 2016).

[59] *Id.* at 399.

[60] *See* Restatement (Second) of Torts § 4, cmt. b (Am. Law. Inst. 1965).

[61] *See id.* § 298.

guard against Amtrak mishandling the mats in 30th Street Station, Aramark had a duty in this case to exercise reasonable care—including, for example, to suggest the appropriateness of the mat and its placement at Turkey Hill. Whether Aramark acted with reasonable care in supplying the mat used at the entranceway of the Turkey Hill store is a question for the factfinder. Therefore, summary judgment will be denied as to Aramark.

### IV. CONCLUSION

For the reasons stated above, the Court will grant Defendant Aramark's Motion for Leave to Join Motion for Summary Judgment and deny summary judgment as to both Defendants. An order will be entered.